Jones, J.
(dissenting). I dissent and would hold section 235.00 of our Penal Law unconstitutional under the new obscenity test laid down by the Supreme Court in Miller v. California (413 U. S. 15).
That court has now held that the First Amendment does not preclude State regulation of visual and written materials where the trier of fact, on the basis of the application by the average person of contemporary community standards, finds that the work in question, taken as a whole, appeals to the prurient interest and lacks serious literary, artistic, political or scientific value, and additionally depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable State law.
I have no difficulty in concluding that our statute comports with the first two of these three criteria. I cannot agree, however, that as drafted or as interpreted by our court section 235.00 meets the Supreme Court’s additional mandate of specific definition of the proscribed sexual conduct.
*335 The Supreme Court has declared that the required specificity of conduct may be found either in the explicit language of the statute as written or in authoritative construction of the statute. By authoritative construction I assume is intended, in our case, actual interpretation by decisions in our court, and possibly by interpretations of the lower courts of our State left undisturbed on application for review by us. I am not unmindful, either, of the implied warmth of the Supreme Court’s invitation to us so to construe our statute as to meet its mandate (Miller v. California, 413 U. S., at p. 25; Heller v. New York, 413 U. S. 483, 494).
All acknowledge, T take it, that section 235.00 as presently drafted, without more, does not on its face meet the Supreme Court test for specificity of sexual conduct. The issue turns rather on whether the statute has been or now can reasonably be so construed as to supply the requisite particularity.
Initially I must assume that the call for specificity now laid down by the Supreme Court, with reference to obscenity is distinct from and quite beyond that predictablity generally required to hurdle the more familiar void-for-vagueness obstacle to constitutionality. The treatment of the subject in the Supreme Court,-the care and length of its articulation in the Miller opinion, lends no support to a conclusion that this is indeed nothing more than a fresh restatement of a time-honored rubric and that it could as well have been left unstated. I cannot, therefore, agree with the majority, that “ Element ‘(b)’ of the new test presents no practical change whatsoever ”.
Thus understood, in my view our statute has not been nor can it now be so construed as to meet this extra demand how imposed by the Supreme Court.*
The court in Miller held that: ‘ ‘ Under the holdings announced today, no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depicit or describe patently offensive ‘ hard core ’ sexual conduct specifically defined by the regulating state law, as written or-construed. We are satisfied that these specific prerequisites will providmiair notice to a dealer in such materials that his *336 public and commercial activities may bring prosecution.” (413 U. S., at p. 27; emphasis supplied.) The requirement of specificity expressed in the quoted language — that State statutes proscribing obscenity must specifically define the conduct to be regulated so as to give fair notice to purveyors of erotic material that their activities may invite prosecution — Could not have been stated in clearer, more unambiguous terms.
If there otherwise were doubt, the court also gave nonlimiting but illustrative examples of acceptable definitions:
“ (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
“ (b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.” (413 U. S., at p. 25.)
This example, too, draws attention both to the delineation of the acts and to the manner of their representation.
The majority of our court, in concluding today that we have so construed our statute as to provide the required overlay of specificity, relies principally on the concept of hard core pornography and states categorically that “ [w]e have applied the hard core pornography test with consistency both under former section 1141 of the Penal Law and under the current statute ”. I have two difficulties with reliance on this assertion, each in my view fatal to the conclusion reached by the majority.
In the first place, examination of the cases in our court refutes the statement. I find no reference, for instance, to any ‘ ‘ hardcore pornography ” test in the opinion in People v. Kirkpatrick (32 N Y 2d 17). In the opinion of our court in Heller, itself, (29 N Y 2d 319) we held there was a violation of the statute, but again entirely without reference to any “ hard-core ” test; in fact the result was based rather on the conclusion of the majority there that the film, “ Blue Movie”, was “ simple pornography unrelieved by any merit ” (p. 321). Again in People v. Fritch (13 N Y 2d 119) while “ hard-core pornography ” was used as one of “ three of the established legal standards ” (p. 123) on which statutory violation was based, the holding of the court was subsequently overruled (see Larkin v. Putnam’s Sons, 14 N Y 2d 399, 404). My review of the cases *337 suggests that, rather than being followed consistently, after its announcement in People v. Richmond County News (9 N Y 2d 578), the hard core pornography test was used once as an alternative ground and with mixed results, in Fritch, and that it has since been entirely ignored in our court.
In the second place, even if the hard core pornography test announced in Richmond County News {supra) had been regularly followed, that test did not include a specific description of the sexual conduct or acts which would meet the new Supreme Court requirement. The hard core test itself, as the language of the opinion in Richmond County News demonstrates, focused on characterization of the acts rather than on their definition or description. Thus — ‘‘ the test of the obscene, of the pornographic, is not in the tendency or appeal of the material, but rather in its content objectively appraised. * * * It focuses predominantly upon what is sexually morbid, grossly perverse and bizarre * * *. Recognizable ‘ by the insult it offers, invariably, to sex, and to the human spirit ’ * * * it is to be differentiated from the bawdy and the ribald. Depicting dirt for dirt’s sake, the obscene is the vile, rather than the coarse, the blow to sense, not merely to sensibility. It smacks, at- times, of fantasy and unreality, of sexual perversion and sickness ” (9 N Y 2d, at p. 587). The conclusion in Richmond County News was that the magazine then under scrutiny “ contains nothing which smacks of sick and blatantly perverse sexuality.” (Id.)
Evidently this test has no concern for the specific definition of sexual acts or conduct. Rather its focus is on the characterization, the quality of the acts performed. As Judge Scileppi wrote in the only other application of the hard core pornography test, in Fritch, the material “ must be viewed in juxtaposition to time, place and circumstance ” (13 N Y 2d, at p. 123).
In this sense the hard core pornography test is parallel to the requirement of the Supreme Court that, quite aside from the necessity for specific definition of the conduct, proscription may attach only if the act is depicted or described “ in a patently offensive way I note that the dual aspect of the requirement is unmistakably set forth in the Supreme Court’s opinion in Miller: “ unless these materials depict or describe patently *338 offensive ‘ hard core ’ sexual conduct specifically defined by the regulating state law, as written or construed ” (413 TL S., at p. 27; emphasis added). There are thus two facets to this branch of the test— (a) hard core and (b) specific definition. It must be evident that hard core (or depiction “ in a patently offensive way ”, in the diction of the Supreme Court [p. 24]) is a characterization which may or may not be applied to many sexual acts. The conclusion that the representation of the act is hard core depends, not on the act itself, but on the setting and the way in which the act is done, the overtones, the nuances, the message conveyed.
In my view, then, our court can only accurately be said to have gently laid the hard core pornography test aside. Even if there be no agreement with my reading of the cases in this respect, however, I nonetheless reach the conclusion that that test itself could only be equated to the requirement that the display be “ patently offensive ”. I do not find in the hard core test, or otherwise in the opinion of the majority in this case, that there had been any substitute by judicial construction of section 235.00 for the catalogue of sexual acts found acceptable by the Supreme Court in the statutes of Oregon and Hawaii. Nor do I find any equivalent of that court’s more general illustrative list of defined sexual conduct — “ ultimate sexual acts ”, “ masturbation, excretory functions and lewd exhibition of the genitals ”.
Accordingly, I would hold section 235.00, both as written and as construed by our court, insufficient to meet the new and distinct specific-definition-of-conduct test laid down by the Supreme Court. Thus, in my view, it is unconstitutional. That being so, the convictions in both the cases now before us should be reversed and the complaints dismissed.

1 note that four Justices in the Supreme Court without more would have held our statute unconstitutional.